**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**EVENFLO COMPANY, INC.,**

        **Plaintiff,**

**-vs-**         Case No. 3-:05-CV-346

**HANTEC AGENTS LIMITED, et al.,**

       Judge Thomas M. Rose

        **Defendants.**

___

**ENTRY AND ORDER OVERRULING HANTEC'S MOTION TO COMPEL (Doc. #56)**
___

Now before the Court is Hantec Agents Limited's ("Hantec's") Motion To Compel Evenflo To Return Hantec's Inadvertently Produced Privileged Documents and To Prevent Evenflo From Using Any Information That It Obtained, If Any, From the Privileged Documents (Hantec's "Motion To Compel"). (Doc. #56.) Evenflo Company, Inc. ("Evenflo") responded with a memorandum in opposition. (Doc. #62.) Hantec replied and Evenflo, with leave of Court, filed a sur-reply. Hantec's Motion To Compel is, therefore, ripe for decision. The relevant facts will first be set forth followed by an analysis of Hantec's Motion To Compel.

**FACTUAL BACKGROUND**

In December of 2005, Evenflo served a first set of requests for the production of documents and a first set of interrogatories on Hantec. (Affidavit of Gillian Overland (hereinafter "Overland Aff.") ¶ 6 Aug. 14, 2006.) Hantec's counsel then requested that its client in Taiwan forward all of the documents relating to the dispute rather than determining which documents were responsive to each request. (Id. ¶ 8.) Shortly before the deadline to respond, Hantec's

Counsel received 10,085 pages of documents from its client that its client believed were relevant to the dispute. (Id. ¶ 9.)

According to Hantec, many hours were expended reviewing these documents before they were forwarded to Evenflo on February 24, 2006. (Id. ¶ 10.) The documents were reviewed, according to Hantec's counsel, to determine whether they were relevant and responsive and to insure that no privileged documents were produced. (Id. ¶ 11.) However, none of the privileged documents that are now the subject of the Motion To Compel were identified during this review. (Id. ¶ 10.)

Upon receipt of the 10,085 pages, Evenflo's Counsel assigned the task of initially reviewing them to a first year associate. (Declaration of Timothy R. Bricker (hereinafter Bricker Decl.") ¶ 4 Aug. 28, 2006.) The first year associate informed Timothy Bricker, a partner, that a document that he had reviewed appeared to contradict a Hantec interrogatory response. (Id. ¶ 6.) Upon review of that document, Mr. Bricker discovered that it appeared to reflect communications between Hantec and its counsel. (Id. ¶ 8.) The document was returned to the first year associate with instructions to complete the review of the 10,085 pages and segregate any other similar documents. (Id.)

Evenflo's Counsel then informed Hantec's Counsel, in a letter, that the 10,085 pages of documents contained communications between Hantec and its legal representatives. (Overland Aff. ¶ 13.) The letter also indicated that Evenflo's Counsel considered the production intentional and requested that Hantec produce all other privileged documents relating to the topics discussed in the communications between Hantec and its legal representatives. (Id.)

Hantec's Counsel then wrote Evenflo's Counsel advising that Hantec's Counsel was not

aware of the allegedly privileged documents and that any production of privileged documents was wholly inadvertent. (Id. ¶ 15.) Hantec's Counsel also requested that Evenflo's Counsel identify which documents were produced that contained attorney-client communications. (Id.)

Evenflo's Counsel responded that it should not and would not take the responsibility for identifying Hantec's allegedly privileged documents. (Id. Ex. C.) Evenflo's Counsel also reiterated its belief that any privilege had been waived. (Id.)

Following several extrajudicial efforts to resolve the disagreement regarding the allegedly privileged documents, Hantec's Counsel again reviewed the 10,085 documents. (Id. ¶ 23.) According to Hantec's Counsel, approximately 90 documents were found that it believed were privileged. (Id. ¶ 24.)

Hantec's Counsel avers that it had no knowledge that the allegedly privileged documents had been produced. (Id. ¶ 14.) Hantec's Counsel also avers that its client has never instructed it to waive the privilege allegedly attached to the documents and it was not their intention to do so. (Id.)

On June 6, 2006, Hantec's Counsel wrote a letter to Evenflo's Counsel that identifies the pages that Hantec's Counsel believes are privileged. The documents identified in the June 6th letter are pages with bates numbers: H0009450, H0009451, H0009453-H0009501, H0009503, H0009504, H0009544-H0009547, H0009553-H0009555, H0009558-H0009560, H0009563, H0009565, H0009567-H0009573. Hantec's Counsel requested immediate return of these documents and confirmation that Evenflo's Counsel would not use the information contained in the documents identified. (Id. ¶ 25.)

Evenflo's Counsel responded in a letter dated June 21, 2006, that it had segregated the

-3-

documents identified in the June 6th letter pending resolution of the matter. (Id. Ex. J.) Evenflo also indicated that it had not shown or provided them to anyone outside its office and had no intention to use them or any information contained therein at any deposition. (Id.) Evenflo's Counsel later informed Hantec's Counsel that only a former first year associate of Evenflo's Counsel's firm had reviewed the allegedly privileged documents and that they had previously been segregated by him. (Id. ¶ 30.)

Turning finally to the pages in question, in its letter of June 6, 2006, Hantec identified 72 pages as inadvertently produced. Evenflo confirmed that the documents identified had been segregated and not used in any manner. (Bricker Decl. Ex. H.)

Hantec submitted a privilege log and copies of the documents identified in the privilege log with its Motion To Compel.[1] Hantec also indicates that it has reviewed the 10,085 pages a third time "and approximately 40 additional privileged documents were found." (Hantec Mot. To Compel at 5 n.1.) The privilege log identifies 134 pages and does not include 6 pages that were previously identified in Hantec's June 6th letter.[2]

Evenflo's counsel avers that it has submitted its sole copy of the documents identified in the June 6th letter to the Court. (Bricker Decl. ¶ 20.) Evenflo's counsel also avers that it has submitted its sole copies of the remaining documents identified in Hantec's privilege log to the Court along with the filing of its memorandum in opposition. (Id. ¶ 21.) The Court has these documents in hand and notes that page H0005961 is on the privilege log and was not provided

---

[1] This is the first time Evenflo had been given Hantec's privilege log. (Bricker Decl. ¶ 17.)

[2] These six pages are attached as Ex. A to the undated Declaration of Gillian Overland that was submitted with Hantec's reply memorandum.

by Evenflo and pages H0009488, H0009494, H0009547, H0009567, H0009569 and H0009572 are not on the privilege log and were provided to the Court by Evenflo. Finally, Evenflo's counsel avers that, to date, it has not used the disputed documents in this litigation. (Bricker Decl. ¶¶ 9, 19; Affidavit of Jeffrey A. Lipps ¶ 3 (Aug. 28, 2006; Affidavit of David C. Greer ¶ 3 Aug. 28, 2006.) Having set forth the relevant facts, the entry and order turns to an analysis of Hantec's motion.

## MOTION TO COMPEL

Hantec first argues that it has not waived the privileges attached to the documents identified in its privilege log, that Evenflo should be compelled to return the documents and that Evenflo should be precluded from using the information contained in the documents. Evenflo responds that Hantec has not shown that the documents are privileged and the privilege log violates both Fed.R.Civ.P. 26(b)(5) and Local Rule 26(b). Hantec then replies that the documents identified on the privilege log are protected by the attorney-client privilege.

### The Documents To Be Considered

The first issue to be addressed is a determination of which documents Hantec seeks to protect. Hantec's initial discovery response identified no privileged documents. Then, in its letter of June 6, 2006, Hantec identified 72 pages of allegedly privileged documents. Hantec provided no privilege log at the time.

Next, as part of Hantec's Motion To Compel, Hantec provided a privilege log and copies of the documents identified on the privilege log. However, the privilege log identifies 134 pages and does not include 6 pages that were previously identified in Hantec's June 6th letter.

Further, the privilege log does not satisfy the requirements of Local Rule 26.1(b). It does

not cross reference the specific discovery request to which each assertion of privilege pertains and it does not begin with the oldest document for which a privilege is claimed.

The Court could ask Hantec to review its discovery responses for a fourth time and prepare a privilege log that satisfies the federal and local rules. However, to do so would only create more work for Evenflo and for this Court and would not be in the interest of judicial economy. Therefore, the Court will assume that the documents listed on the privilege log provided by Hantec are those that Hantec wishes to protect. Further, since the Court has the documents and/or copies thereof, the analysis regarding privilege will proceed without a properly prepared privilege log.

The Attorney-Client Privilege

The purpose of the attorney-client privilege is to encourage clients to communicate freely with their attorneys. *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996). However, because the attorney-client privilege operates to reduce the amount of information discoverable, it is narrowly construed. *Id.*

This is a diversity action. Therefore, Ohio's law of privilege is applicable by virtue of Federal Rule of Evidence 501. *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 177 (S.D.Ohio 1993). However, there is no material difference between Ohio's attorney-client privilege and the federal common law privilege. *Id. n.3*.

The federal common law attorney-client privilege is set forth as follows:

> Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to the purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except [where] the protection be waived.

*Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 669 (E.D.Mich. 1995)(citing *United States v.*

*Goldfarb*, 328 F.2d 280, 281 (6th Cir. 1964), *cert. denied*, 377 U.S. 976 (1964)), *aff'd*. 91 F.3d 143 (6th Cir. 1996). However, the privilege only applies if the lawyer is providing legal advice or services and not where the attorney acts as a business or economic advisor and provides non-legal advice. *Id.* Finally, the party claiming privilege has the burden of proof. *Guy*, 154 F.R.D. at 177.

Each document identified by Hantec in the privilege log will next be reviewed to determine if the attorney-client privilege applies:

> A. H0005758, H0005933, and H0009503 are invoices from the law firm of Kane Kessler to Hantec. "Typically, the attorney-client privilege does not extend to billing records and expense reports." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999), *cert. denied*, 528 U.S. 891 (1999). However, invoices which reveal the motive of the client in seeking representation, litigation strategy or the specific nature of the services provided are privileged. *Id.* In this case, the invoices reveal the specific nature of the services provided. They are, therefore, privileged documents.
>
> B. H0005961 is, in part, an e-mail that was sent from Ronald Nuremburg, an attorney, to Hua Tu, his client regarding legal advice. This part of the document is protected by the attorney-client privilege.
> However, the document and the attachment was then forwarded by Hua Tu to Barry Askin who appears to be a business person involved with the issues in this lawsuit. Communications between Hua Tu and Barry Askin, neither of which are professional legal advisers, are not protected by the attorney-client privilege.
> Hantec argues that Four Paws, a company of which Barry Askin is presumably a principal, was also seeking legal advice from Kane Kessler regarding the Agreement at issue. However, the portion of the e-mail in question is not from anyone at Kane Kessler to Barry Askin. It is from Hua Tu to Barry Askin.
> Further, H0006081-H0006107 is a draft agreement that was attached to the e-mail sent by Hua Tu to Barry Askin. This copy of the Agreement is, therefore is not subject to the attorney-client privilege.
>
> C. H0006080, H0006160, H0006161-H0006177, H0007271, H0007272-H0007297, H0009450-H0009451, H0009453-H0009479, H00099480-H0009481, H0009482, H0009483, H0009484, H0009485, H0009486, H0009487, H0009489-H0009490, H0009491, H0009492, H0009493, H0009495-H0009497, H0009498, H0009499-H0009501, H0009504, H0009544, H0009545, H0009546, H0009553-H0009554, H0009555, H0009558, H0009559-H0009560, H0009563, H0009565, H0009568, H0009570, H0009571, and H0009573 are correspondence or attachments thereto

between a professional legal adviser and client. These documents are, therefore, protected by the attorney-client privilege.

D. H0009557 appears to be a signature page to a document but there is no indication as to whom the document was sent or as to the contents of the document. The previous page, H0009556 is not identified on the privilege log nor provided by Hantec. Therefore, Hantec has not sustained its burden of showing that H0009557 is privileged.

E. Hantec claims that H0009581 is protected by the work-product doctrine. Documents prepared in anticipation of litigation or for trial by or for a party are protected by the work-product doctrine. *Guy*, 154 F.R.D at 181. This appears to be a document prepared for a party in anticipation of litigation. H0009581 is, therefore, protected by the work-product privilege.

Having determined which documents are subject to either the attorney-client privilege or the work-product privilege (hereinafter the "Privileged Documents"), the analysis continues. The court must next determine if Hantec has waived the privileges.

Waiver

Hantec presents evidence that the Privileged Documents were inadvertently disclosed and that they, therefore, should be returned and not used by Evenflo. For this argument, Hantec relies upon cases from the Northern District of Illinois. *Mendenhall v. Barber-Greene Co.*, 531 F.Supp. 951 (N.D.Ill. 1982), and the Southern District of New York, *Connecticut Mutual Life Insurance Co. v. Shields*, 18 F.R.D. 448 (S.D.N.Y. 1955), wherein the courts determined that inadvertent production of documents does not waive privilege.

Evenflo does not argue that the disclosure was not inadvertent but responds that Hantec has waived privilege. For its argument, Evenflo relies upon a different approach to waiver analysis termed the "middle ground" approach. *See Miles-McClellan Construction Co. v. The Board of Education Westerville City School Board*, Case Nos. 05AP-1112, 1113, 1114 and 1115, 2006 WL 1817223 (Ohio Ct. App. June 30, 2006).

Three approaches to inadvertent disclosure have been taken by federal courts. *Id.* at *4. Some have applied a test of strict accountability, termed the "objective approach," holding that nearly any disclosure of the communication waives the privilege. *Miles-McClellan*, 2006 WL 1817223 at *4; *Fox*, 172 F.R.D. at 671. Other courts have held that unintentional disclosure does not waive the privilege and that a waiver must be intentional. *Id.* This is termed the "subjective approach" and is the approach advocated by Hantec. *See Fox*, 172 F.R.D. at 671. The third approach, termed the "middle ground" approach, assesses whether the circumstances of the inadvertent disclosure warrant a finding that the privilege has been waived. *Miles-McClellan*, 2006 WL 1817223 at *4, *Fox*, 172 F.R.D. at 671.

The Sixth Circuit has not set forth an approach to inadvertent disclosure. However, district courts within the Sixth Circuit and Ohio courts have found that the "middle ground" approach is the most fair and appropriate. See *Fox*, 172 F.R.D. at 671; *Edwards v. Whitaker* 868 F.Supp. 226, 229 (M.D.Tenn. 1994); *Federal Deposit Insurance Corp. v. Ernst & Whinney*, 137 F.R.D. 14, 17 (E.D.Tenn. 1991); *Dyson v. Amway Corp.*, Case No. G88-CV-60, 1990 WL 290683 at *2 (W.D.Mich. Nov. 15, 1990); *Miles-McClellan*, 2006 WL 1817223 at *5. This Court agrees that the "middle ground" approach is the most fair and appropriate and will use this approach.

Under the "middle ground" approach, the following factors are weighed: (1) the reasonableness of precautions taken in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the magnitude of the disclosure, (4) any measures taken to mitigate the damage of the disclosures, and (5) the overriding interests of justice. *Fox*, 172 F.R.D. at 671. Each of these factors will next be assessed with regard to the Privileged

Documents.

### 1. Reasonableness of Precautions Taken

There were two boxes containing 10,085 pages for Hantec to review. Hantec makes the bare assertion that "many hours were spent reviewing [these] voluminous documents." (Overland Aff. ¶ 10 Aug. 14, 2006.)

However, this factor can hardly weigh in favor of Hantec when there were only two boxes to screen, the privileged character of the documents is open and obvious and no privileged documents were found when they were first screened. Further, the documents that Hantec now argues to be privileged were "indiscriminately mingled" with non-privileged documents. *See U.S. v. Kelsey-Hayes Wheel Co.*, 15 F.R.D. 461, (E.D.Mich 1954)(it is difficult to be persuaded that documents were intended to remain confidential when they were indiscriminately mingled with other routine documents).

Also, after the issue was raised by Evenflo, Hantec carefully screened the documents two more times and discovered additional documents both times. Finally, Hantec did not prepare a privilege log until after all three screenings and the privilege log is not prepared in accordance with this Court's Local Rules.

### 2. Number of Inadvertent Disclosures

The number of inadvertent disclosures is 134 pages out of the total of 10,085 pages in the two boxes. Thus, one of each 75 pages was inadvertently disclosed. The significance of the disclosure of privileged documents and the obvious privileged character of the documents in question here makes the number of inadvertent disclosures relatively high. *See Dyson*, 1990 WL 290683 (inadvertent production of 93 documents within a total of about 15,000 waived

privilege).

### 3. Magnitude of the Disclosure

This is not a case where the disclosure was made to a third party or where the disclosure was minimal. In this case, the documents that were inadvertently disclosed were essentially complete documents, there were a significant number of documents disclosed and no privilege log was provided with the disclosed documents. This could easily have led to their distribution and use by Evenflo. The only reason that the inadvertently disclosed documents were not distributed is that a first year associate at Evenflo discovered them and Evenflo's counsel elected not to use them further pending resolution.

### 4. Measures Taken To Mitigate the Damage of the Disclosure

Hantec provided the initial document production containing the inadvertently produced pages to Evenflo on February 24, 2006. Evenflo notified Hantec on April 11, 2006, that its document production contained documents between Hantec and its counsel. ((Overland Aff. ¶ 13 Aug. 14, 2006.) Rather than attempting to identify the allegedly privileged documents itself, Hantec asked Evenflo to identify and return the privileged documents, which of course, Evenflo should not and could not do. (Bricker Decl. Ex. E. Aug. 28, 2006.) Finally, on June 6, 2006, Hantec identified some, but not all, of the documents that it now claims are privileged. (Id. Ex. G.)

When Evenflo refused to return the identified documents without court intervention, Hantec took court action by filing a motion to disqualify counsel. However, Hantec did not identify all of the documents to the court and provide a privilege log thereof until, at the request of the court, on August 14, 2006, it filed the motion that is now before the Court.

In Hantec's favor, the evidence indicates that there were several extrajudicial efforts to resolve the dispute regarding the inadvertent production of privileged documents. However, Hantec's approach to resolving the dispute, including its inability or refusal to identify all of the inadvertently privileged documents, overcomes its extrajudicial efforts.

### 5. Interests of Justice

A significant portion of the Privileged Documents relate to drafts of contracts between the parties. Since the contracts presumably have been executed, the drafts are of minimal relevance. However, the documents also include information relating to Hantec's relationship with other entities which seems to be at the heart of this dispute and which may lead to information that is not otherwise discoverable. Also, granting this motion would condone Hantec's carelessness.

### Conclusion

All five factors weigh in favor of a determination that Hantec waived privilege on the documents to which a privilege applies. Hantec did not take reasonable precautions to protect the Privileged Documents. The consequences of the disclosure of privileged documents in general and the number disclosed in this case are both significant. No privilege log was provided at the time of disclosure. The Privileged Documents were disclosed to the opposing party and were complete documents. The precautions taken by Hantec to avoid disclosure and the measures taken to mitigate damages were not reasonable. Finally, the contents of some of the Privileged Documents may be relevant to the heart of the dispute between the parties and Hantec's carelessness cannot be condoned.

Hantec' Motion To Compel is OVERRULED. Some of the documents on Hantec's

privilege log are not protected by a privilege and Hantec has waived any privileges associated with the remaining documents.

The originals submitted by Evenflo will be returned to Evenflo. The copies of allegedly privileged documents submitted to the Court by Hantec will be stored by the Court's Court Reporter for a limited amount of time. Finally, all of the documents at issue have been addressed and the Court is unaware of any remaining documents that are alleged to be privileged.

Attorneys' Fees

In addition to opposing Hantec's Motion To Compel, Evenflo seeks an award of attorneys' fees pursuant to Fed.R.Civ.P. 37(a)(4)(B). Hantec has not responded to this request.

Rule 37(a)(4)(B) provides that, if a motion is denied, the court shall require the moving party or the attorney filing the motion or both to pay to the party opposing the motion its reasonable expenses incurred, including attorneys' fees. Reasonable expenses shall be required to be paid unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

In this case, there was a legitimate dispute regarding privileged documents that both parties attempted to resolve extrajudicially. Further, the Motion To Compel was substantially justified and leave of Court was provided to file it. Therefore, an award of expenses would be unjust and Evenflo's request for reasonable expenses, including attorneys' fees, is not well founded.

**DONE** and **ORDERED** in Dayton, Ohio, this Thirteenth day of October, 2006.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record